**KENTUCKY BAR ASSOCIATION,**
**Movant**

**v.**

**Kenneth Eugene RYLEE,**
**Jr., Respondent.**

**No. 2006–SC–000134–KB.**

Supreme Court of Kentucky.

April 20, 2006.

Bruce K. Davis, Executive Director, Greg Munson, Deputy Bar Counsel, Ken-

tucky Bar Association, Frankfort, Counsel for Movant.

Harry P. Hellings, Jr., Covington, Counsel for Respondent.

## OPINION AND ORDER

Kenneth Eugene Rylee, Jr., KBA member no. 85636, moves this court to enter an order permanently disbarring him from the practice of law in the Commonwealth of Kentucky. Respondent's bar roster address is 111 Park Place, Covington, Kentucky 41011. He was admitted to practice law in this Commonwealth on April 18, 1995.

Rylee's motion for permanent disbarment (the functional equivalent of a guilty plea in proceedings of this type) is based on his representation in ten separate instances. Two of these instances resulted in criminal charges and, as a result, this Court has already issued an order of temporary suspension against him. Respondent admits that the Inquiry Commission has grounds to issue charges in each of the ten instances, but requests that this Court resolve the entire complaint by allowing him to resign under terms of permanent disbarment. The Kentucky Bar Association (KBA) agrees that permanent disbarment is appropriate and therefore offers no objection to the motion. We accept the KBA's recommendation and order that Respondent be permanently disbarred for various violations of the Kentucky Rules of Professional Conduct. Respondent has acknowledged that permanent disbarment prevents him from ever again obtaining a Kentucky law license and that the provisions of SCR 3.480(3)(a) and SCR 3.510 do not apply.

## FACTS AND CHARGES

Respondent was dissatisfied with the compensation he was to receive from the Commonwealth of Kentucky for his representation of a criminal defendant on a murder charge. As a result, he suggested to a state-contracted private investigator that the investigator "pad" his bill and give Respondent the proceeds. After the investigator notified authorities, they worked together to secure evidence of Respondent's plan. The investigator taped a follow-up telephone conversation in which he told Respondent he had some "wiggle" room on his bill for that month and Respondent advised him to "wiggle all you can." The investigator offered to add ten hours for each Saturday of the current month, totaling an additional $3,000.00, and Respondent agreed.

Consequently, criminal charges were filed against Respondent. A bar complaint was also filed but, because the criminal charges were pending, Respondent invoked his Fifth Amendment right and refused to answer the bar complaint. Ultimately, Respondent entered an *Alford* plea to one count of solicitation to commit theft by unlawful taking over $300.00, a class A misdemeanor. Respondent was fined $500.00, required to pay court costs, and sentenced to serve thirty days in jail. Even after Respondent's plea, he failed to answer the bar complaint.

SCR 3.130–8.3(b) and (c) provide that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," and to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Additionally, SCR 3.130–8.1(b) provides that a lawyer shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Respondent acknowledges that his conduct constituted violations of SCR 3.130–8.1(b), SCR 3.130–8.3(b) and SCR 3.130–8.3(c).

In another instance, Respondent was retained by Merri Melissa Jackson to represent her as the victim in a criminal case. Respondent suggested to the defendant's attorney that for "six figures," he could ensure that Respondent's client, the victim, would not testify against the defendant. The defense attorney notified authorities. Subsequently, two detectives went to the defense attorney's office where they witnessed a conversation between the defense attorney and Respondent over the speakerphone. Respondent commented that it would take "three-hundred," (understood by all involved to be $300,000.00) to prevent the victim from testifying. In response to the defense attorney's inquiries, Respondent stated that the money would go through his office to the victim as a settlement. Following the conversation, Respondent faxed a letter to the Assistant Commonwealth's Attorney stating that his client was invoking her Fifth Amendment right and would not be testifying.

The defendant and his wife then gave the defense attorney a tape recording of a conversation between their son and the victim, wherein the victim stated that she was getting $300,000.00 from the defendant, $100,000.00 of which would go to her attorney, Respondent.

The detectives made copies of $5,000.00 in U.S. currency and generated a fake cashier's check in the amount of $145,000.00, representing half of the amount agreed upon. The other half was to be delivered upon dismissal of the criminal charges. The defendant, while being electronically monitored by the detectives, took the money into Respondent's office. Respondent took the money and issued the defendant a receipt. Consequently, the detectives arrested Respondent. After being Mirandized, Respondent admitted that his conduct constituted tampering with a witness or obstruction of justice. Respon-

dent pled guilty to theft by extortion, a class D felony, and received a two-year sentence with alternative sentencing. Under the terms of the plea, Respondent was sentenced to sixty days in a halfway house with work release and agreed to cooperate with the Kentucky Bar Association in processing his permanent disbarment. Again, Respondent acknowledges that his conduct violated SCR 3.130–8.3(b) and SCR 3.130–8.3(c) which we have quoted hereinabove.

While incarcerated, Jeffrey L. Turner retained Respondent to file a motion to have Turner referred from prison to a substance abuse program. Respondent advised Turner that he believed the motion would be successful and accepted $1,500.00 in attorney's fees as well as $1,500.00 for the purpose of reserving a bed at the substance abuse rehabilitation facility. Respondent assured Turner that he would be released from prison for admission into the facility. However, the motion was overruled and despite repeated demands from Turner, Respondent failed to return the money Turner gave him to secure a bed at the facility. Respondent also failed to return any portion of his unearned fee. Turner filed a bar complaint. Respondent concedes that his conduct violated SCR 3.130–1.15(b) which requires prompt delivery and accounting of funds accepted on behalf of a client or, as in this case, a third party. Respondent concedes that his misappropriation of Turner's money violated SCR 3.130–8.3(c) which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation.

Denise D. Williams hired Respondent to file a civil action against three of her former tenants for delinquent rent payments and destruction of property. Williams agreed to a fee of $100.00 per hour in addition to a $300.00 retainer which she paid him up front. In response to repeated attempts by Williams to inquire

about the status of her case, Respondent ultimately told her that he had a conflict of interest in representing her against two of the former tenants and that his partner would be handling the case. However, Respondent's partner knew nothing about the case when Williams contacted him. Williams filed a bar complaint against Respondent. Respondent admits that he violated SCR 3.130–1.4 which requires a lawyer to keep a client reasonably informed of the status of her case and promptly respond to a client's requests for information.

John C. Henry retained Respondent to represent him in a criminal matter in mid-October 2004. In March 2005, Henry filed a bar complaint against Respondent because Respondent had yet to visit Henry to review his case despite multiple promises to do so. Henry also asserted that Respondent had refused to give Henry copies of discovery, that Respondent had missed at least two scheduled court appearances, and that Respondent had rejected a plea offer from the Commonwealth without consulting Henry. After Henry filed the bar complaint, he and Respondent agreed to continued representation on the underlying criminal case. Ultimately, a favorable plea agreement was reached. However, Respondent acknowledges that, in the course of his representation, he violated SCR 3.130–1.4(a) and SCR 3.130–1.4(b). These two Rules require a lawyer to keep a client reasonably informed about the status of his case and to explain matters to the extent reasonably necessary for his client to make informed decisions about his representation.

Melissa Holt paid Respondent a $1,370.00 retainer to represent her father, James Holt, in a criminal action. Respondent visited Holt in jail and informed him that he would need more money before he could begin working on the case. Respon-

dent did nothing further on Holt's behalf and refused to return the retainer despite repeated demands. Although Respondent's former law firm reimbursed Holt, Respondent admits that he violated SCR 3.130–1.16(d), which requires a lawyer to refund any advance payment of a fee that has not been earned, and SCR 3.130–1.3, which requires reasonable diligence and promptness in representation.

Patricia Brown paid Respondent $500.00 to represent her son in a criminal charge that she believed was imminent. However, no charges were ever filed against Brown's son and Brown demanded return of the unearned portion of the attorney fee. When Respondent refused to return any of the fee, Brown filed a bar complaint. Respondent did not respond to the complaint. Respondent admits that he violated SCR 3.130–1.16(d) by failing to return the unearned portion of his fee. He also admits a violation of SCR 3.130–8.1(b) by failing to respond to the bar complaint.

Darren Dressman hired Respondent to represent his son, David Dressman, on a murder charge. However, three days before trial, Respondent was arrested and incarcerated. Thus, the Dressmans were unable to reach Respondent. Respondent failed to respond to the bar complaint Dressman filed in this matter. Respondent concedes that he violated SCR 3.130–1.4(a) by failing to keep his client reasonably informed about the status of his case and SCR 3.130–8.1(b) by failing to respond to the bar complaint.

James H. Voges retained Respondent to represent him in a custody matter involving Voges' granddaughter. Voges made various payments to Respondent, via checks and cash, which totaled $1,500.00. Voges' repeated attempts to contact Respondent regarding the status of his case were unsuccessful and Respondent made no effort to contact Voges. Nevertheless,

Respondent retained the unearned fee. Voges filed a bar complaint against Respondent and although Respondent had not been formally served with the complaint at the time of this motion, he acknowledged receipt of the complaint from the Kentucky Bar Association's Office of Bar Counsel. Respondent admits that his failure to keep Voges informed about the status of his case violated SCR 3.130–1.4(a) and that his failure to return his unearned fee to Voges violated SCR 3.130–1.16(d).

George Riley hired Respondent to represent him in an action to enforce the payment of child support. Riley made various cash payments totaling $700.00, which Respondent has not returned to Riley, even though Respondent never filed a motion for contempt regarding the opposing party's failure to pay child support. Respondent acknowledges that he violated SCR 3.130–1.4(a) by failing to keep Riley informed about the status of his case and SCR 3.130–1.16(d) by failing to return his unearned fee.

## CONCLUSION

We agree with the KBA that permanent disbarment is the only acceptable discipline for Respondent's numerous and egregious violations of the Kentucky Rules of Professional Conduct.

ACCORDINGLY, IT IS HEREBY ORDERED:

(1) Respondent, Kenneth Eugene Rylee, Jr., shall be and is hereby Permanently Disbarred from the practice of law in the Commonwealth of Kentucky.

(2) Respondent, Kenneth Eugene Rylee, Jr., in accordance with SCR 3.390, shall notify all Courts in which he has matters pending and all clients for whom he is actively involved in litigation and similar legal matters, of his inability to continue representation.

(3) Respondent, Kenneth Eugene Rylee, Jr., shall immediately cancel and cease any advertising activities in accordance with SCR 3.390.

(4) In accordance with SCR 3.450, Respondent, Kenneth Eugene Rylee, is directed to pay all costs associated with these disciplinary proceedings in the amount of $714.41 for which execution may issue from this Court upon finality of this order.

All concur.

ENTERED: April 20, 2006.

/s/ Joseph E. Lambert
CHIEF JUSTICE